IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 11, 2006

## CHRISTOPHER HODGE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7359      Joseph H. Walker, III, Judge**

_____

**No. W2005-01588-CCA-R3-PC  - Filed May 19, 2006**

_____

The petitioner, Christopher Hodge, appeals the dismissal of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel.  Following our review, we affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

D. Michael Dunavant, Ripley, Tennessee, for the appellant, Christopher Hodge.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer-Walker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was convicted by a Lauderdale County jury of the second degree murder of his West Tennessee State Penitentiary cellmate, Ricky Ardd, and was sentenced by the trial court as a multiple offender to thirty-five years at 100%.  His conviction was affirmed by this court on direct appeal, and his application for permission to appeal to the supreme court was denied.  See State v. Christopher David Hodge, No. W2003-01513-CCA-R3-CD, 2004 WL 2290495, at *1 (Tenn. Crim. App. Oct. 11, 2004), perm. to appeal denied (Tenn. Feb. 28, 2005).

The proof at the petitioner's trial established that the five-foot, six-inch, 145-pound victim was transferred to the petitioner's two-man cell on May 27, 2002.  Id. at *1.  At approximately 6:00 p.m. that same day, the petitioner called out to Correctional Officer Sherry Cox that the victim was unconscious.  Id. at *2.  The victim, however, was dead.  Id.  Shelby County Medical Examiner Dr.

O. C. Smith, who supervised the autopsy of the victim's body, testified at trial that the cause of death was strangulation by use of a ligature. Id. When shown a torn bed strip attached to a fork, which had been found in the petitioner's cell, Dr. Smith agreed that the victim's injuries were consistent with strangulation by means of such an instrument. Id.

The petitioner's trial strategy consisted of an attempt to show that the killing occurred in self-defense. Our direct appeal opinion summarizes the petitioner's testimony at trial:

> The [petitioner] testified that he was twenty-one years old, stood six feet, six inches tall, and was a native of Knoxville. He said he was in the segregation unit for refusal to accept a cell assignment. He had not known the victim prior to the transfer on May 27th. He said the bedding strip, or fishing line in prison parlance, was in his cell when he moved there. He said it was used to suspend a sheet to provide restroom privacy.

> He testified the victim was standing, ranting, and using obscenities after being moved to cell 24. During his shower period, the [petitioner] told Officers Cox and Cahill about the victim's behavior. Later, when the [petitioner] asked the victim to be quiet, the victim spat in the [petitioner]'s face and tackled the [petitioner]. The [petitioner] then placed the victim in a sleeper hold and put him on the floor. The [petitioner] said he did this four times and each time he would release the victim, the victim would get up and attack the [petitioner] again. At one point, the victim attempted to stab the [petitioner] with an ink pen. During this time, the [petitioner] said he repeatedly tried to call out verbally to guards but the noise level from other inmates was too high for him to be heard. When the [petitioner] saw Officer Cox, he told her that medical attention was needed. The [petitioner] said he had no idea that the sleeper hold would kill the victim and he merely intended to render the victim unconscious. On cross-examination, the [petitioner] said he received no injury from the victim's attacks.

Id. at *3.

In contrast to the petitioner's testimony, Corporal Donald East, the control room officer for the segregation unit in which the petitioner's cell was located, testified that the noise level in the unit at 6:00 p.m. was "pretty quiet." Id. Furthermore, the emergency call button in the petitioner's cell, which alerted a warning siren and light in the control room when pressed, had not been activated during Corporal East's shift on May 27. Corporal East testified that the call button was in working condition when checked the following day. Id.

On February 3, 2005, the petitioner filed a *pro se* petition for post-conviction relief in which he raised a number of claims, including ineffective assistance of counsel. On May 20, 2005, following the appointment of post-conviction counsel, the petitioner filed an amended petition in which he again alleged ineffective assistance of counsel. Specifically, he asserted that trial counsel

failed to adequately investigate the facts and interview material witnesses in preparation of possible defenses and mitigation in the case; failed to file a subpoena or otherwise obtain discovery of the log book entries for the prison's control booth, which would have shown that the petitioner's call button had been activated near the time of the victim's death; failed to obtain independent forensic testing of the alleged murder weapon and evidence to show that the victim's injuries were consistent with a torn shirt caused during an altercation; failed to meet with the petitioner an adequate number of times in order to prepare a legitimate defense; failed to secure the petitioner's presence at a February 5, 2003, pretrial motion hearing; and failed to properly object to the testimony of Dr. O.C. Smith, the State's surprise witness at trial. The petitioner contended that the cumulative effect of trial counsel's deficiencies in representation prejudiced the outcome of his case.

At the June 10, 2005, evidentiary hearing, trial counsel testified she was an assistant public defender and was appointed in October 2002 to represent the petitioner in his second degree murder case. She said she represented him through the filing of his notice of appeal, but another lawyer handled the appeal. During the course of her representation, she met with the petitioner in prison four or five times, with each meeting lasting at least two hours, and she believed she spent an adequate amount of time with him to discuss the facts and formulate their defense strategy, which consisted of attempting to show that the victim was the first aggressor and that the petitioner had acted in self-defense.

Trial counsel testified that, although she received discovery from the State, the prison would not provide the records she had requested from the segregation unit where the petitioner and the victim had been housed. She, therefore, filed a motion to compel discovery of those records, but the trial court denied the motion. The issue was later raised on appeal, where this court ruled that the trial court's denial of her motion to compel constituted harmless error. Trial counsel said she had no other means of obtaining the names of the inmates in the segregation unit, as the petitioner had been transferred to the unit only a short time before the murder and consequently did not know his fellow inmates. However, the petitioner did mention the name of one inmate, Telly Jones, whom trial counsel believed had been a former cellmate of the victim. She stated that she interviewed Jones, who testified for the State at trial. Trial counsel said she discussed with the petitioner her inability to locate or interview the other inmates housed in the segregation unit and that he did not express any frustration to her about it.

Trial counsel acknowledged she did not meet with the petitioner in person at the prison until sometime after December 13, 2002. She identified a letter that the petitioner sent her, dated October 30, 2002, in which he expressed his unhappiness at her failure to meet with him and requested that she file a motion to withdraw as counsel. She said she responded with a November 1, 2002, letter in which she explained that her work and court schedule had prevented her from meeting with him yet, expressed her hopes that they would be able to resolve their differences when they met, and included copies of the pretrial motions she had already filed in his case as well as the Court of Criminal Appeals opinion addressing an issue he had raised about not having received a preliminary hearing. Trial counsel also identified another letter she sent to the petitioner on December 13, 2002, in which she again apologized for not yet having met with him and stated that she would meet with

him soon. She testified that, as she explained in her letter, her delay in meeting with the petitioner was due to her court schedule and an illness which had kept her out of the office for some time. She said she never filed the *pro se* motion to withdraw that the petitioner had attached to his October 30 letter because she believed that she had been able to allay the petitioner's concerns when they met. She stated she could not recall the petitioner's having ever renewed his request that she withdraw as his counsel. She, additionally, stated that she felt prepared to try his case when it went to trial in February 2003 and would not have gone forward to trial had she not been fully prepared.

Trial counsel could not recall why the petitioner was not present at the February 5, 2003, motion hearing, but speculated that it might have been a last minute hearing requested by the State. She acknowledged she never subpoenaed the control room log book, in which emergency call button activations were documented. She testified, however, that she assumed that the log book would only have documented what the correctional officer testified at trial, in that the petitioner's call button was operational and had not been activated. She said that she did not remember having ever discussed the issue with the petitioner, that she would have subpoenaed the control room log book had the petitioner brought it to her attention, and that she "possibly overlooked" that evidence.

Trial counsel said she did not believe she had received any notice prior to trial that Dr. Smith would be testifying in the place of Dr. Gardner, who had performed the actual autopsy of the victim's body. She agreed Dr. Smith's testimony was the most damaging part of the case because of his conclusion that the victim had been strangled by a ligature consistent with the item that had been found in the petitioner's cell. She said she objected to his testimony on the basis that he had not performed the autopsy and moved to exclude him as a witness, but the trial court overruled her objection. Trial counsel testified she did not request independent forensic testing of the victim's torn t-shirt because she did not believe it would have helped the defense. She did not request independent forensic testing of the "fishing line" because, prior to trial, she had "no inkling that Dr. Smith was going to take a piece of clothing item and make it the murder weapon in court." She said she did not move for a continuance to have independent forensic testing of the alleged murder weapon because she did not believe that the trial court, at that late date in the middle of the trial, would have granted a continuance. On cross-examination, trial counsel confirmed that she had been involved in numerous murder trials in the past and testified that she had handled the unexpected matters that arose during the petitioner's trial "[t]o the best of [her] abilities."

The petitioner testified that he was twenty-three years old and had received his GED. He said he saw counsel at his arraignment, but, when he tried to talk to her, she told him that "she didn't speak to people right at that moment." He testified that he later wrote counsel several letters, but she was slow to respond and did not seem very interested in his case. He stated that he did not see counsel again until three days before his trial when she finally came to visit him in prison. The petitioner conceded that counsel sent him copies of pretrial motions she had filed in the case but complained that she never explained the motions to him. He said he gave her the name of one inmate, Telly Jones, whom she interviewed, but he was unable to provide the names of any other inmates because he had only recently been moved to the segregation unit. The petitioner testified that he asked trial counsel on several occasions to locate the other inmates who had been housed in

-4-

the segregation unit because they would be able to testify on his behalf. He said trial counsel told him she would check into it and would "make every effort" to locate them, but she "didn't really do anything about it." He testified that out of all the inmates who had been housed in the unit at the time of the incident, he believed "several of them would have spoke[n] up and been able to testify on [his] behalf, and that it would have changed the outcome" of the case.

The petitioner testified he did not believe that counsel was prepared to try his case. He said he asked trial counsel to obtain the control room log book, but she did not think it was relevant because of Corporal East's testimony that his call light was never activated. He said he also asked her to obtain forensic testing of the alleged murder weapon, but she told him that it was not possible. He stated that he never learned why he was not present at the February 5, 2003, pretrial hearing. He testified that he expressed his concerns to trial counsel about her representation and that her only response was to assure him that she would do the things he requested, but she never did. On cross-examination, the petitioner acknowledged that he was not sure if any other inmates had actually witnessed the incident.

After taking the matter under advisement, the post-conviction court entered a detailed written order on June 13, 2005, denying the petition. Among other things, the post-conviction court accredited trial counsel's testimony with respect to the number and duration of meetings and communications she had with the petitioner and her level of preparation for trial. The post-conviction court found that trial counsel was not deficient in her efforts to obtain the names of other segregation unit inmates, in her attempts to exclude Dr. Smith as a witness, or in her handling of Dr. Smith's cross-examination testimony. The court further found that the petitioner had failed to show any prejudice as a result of the fact that he had not been present at the pretrial motion hearing or as a result of trial counsel's delay in meeting with him in person. Accordingly, the post-conviction court concluded that the petitioner had not met his burden of demonstrating that he was denied the effective assistance of counsel.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

## II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

## III. Allegations of Ineffective Assistance of Counsel

On appeal, the petitioner contends that trial counsel was ineffective for failing to adequately meet with him in order to formulate a defense; failing to adequately investigate the facts and interview material witnesses in preparation of possible defenses and mitigation in the case; failing to obtain discovery of the log book entries for the prison's control booth; failing to obtain independent forensic testing of the alleged murder weapon and the victim's torn shirt; failing to secure the petitioner's presence at the pretrial motion hearing; and failing to properly object to the

surprise testimony of Dr. O.C. Smith. As in the post-conviction court, the petitioner contends that the cumulative effect of these deficiencies in representation prejudiced the outcome of his case and rendered trial counsel's representation ineffective. The State responds by arguing that the petitioner failed to meet his burden of proving his allegations of fact by clear and convincing evidence. We agree with the State.

The record in this case fully supports the post-conviction court's finding that the petitioner received effective assistance of counsel. Trial counsel's testimony, which was accredited by the post-conviction court, established that she had a number of lengthy meetings with the petitioner at the prison and that she responded by letter to his correspondence to her. Trial counsel testified that she met with the petitioner an adequate amount of time to discuss the facts of the case and to discuss and formulate their defense. She received discovery from the State, took steps to compel the discovery of information the prison would not provide, and interviewed the one inmate whose name had been provided to her by the petitioner. However, she was unable to locate or interview the inmates who had been housed in the segregation unit at the time of the incident because the petitioner could not tell her their names and the trial court denied her motion to compel that information. Trial counsel took reasonable steps to identify and interview these inmates, and the petitioner has not shown that she was deficient in her representation.

The petitioner also has not met his burden of demonstrating that he was prejudiced as a result of counsel's alleged deficiency in failing to locate the inmates. At the evidentiary hearing, the petitioner testified only that he believed that some of the other inmates, if located, would have testified in his defense. He conceded, however, that he did not know if any of them actually witnessed the incident. Furthermore, he did not present any of these alleged witnesses at the post-conviction hearing to show that their testimony would, in fact, have been beneficial to his defense had they testified at his trial. Thus, he has not shown that he was prejudiced by the fact that these inmates did not testify at trial. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

The petitioner further contends that trial counsel was ineffective for failing to properly object to the testimony of Dr. Smith, for failing to obtain forensic testing of the alleged murder weapon and the victim's torn t-shirt, for failing to secure his presence at the pretrial motion hearing, and for failing to subpoena the log book records for the control booth, which would have shown the petitioner's call button had been activated near the time of the murder. As noted by the post-conviction court, however, trial counsel objected to the testimony of Dr. Smith at trial but was overruled by the trial court. Furthermore, trial counsel provided reasonable explanations for her failure to obtain forensic testing of the victim's t-shirt or the alleged murder weapon, testifying that the presence of the victim's DNA on his own t-shirt would not have helped the defense and that she had no advance notice, prior to Dr. Smith's testimony at trial, that he would identify the "fishing line" in the petitioner's cell as the murder weapon.

Trial counsel conceded that she might possibly have overlooked the control room log book but explained that the correctional officer in charge of the unit, whom, we assume, would have been the one to enter the log book records, testified at trial that the petitioner's call button had not been

-7-

activated.  Thus, even if counsel was deficient for failing to request these records, the petitioner has not shown that he was prejudiced as a result.  Finally, we also conclude that the record supports the post-conviction court's finding that the petitioner failed to show that he was prejudiced as a result of his failure to attend the pretrial motion hearing.

## **<u>CONCLUSION</u>**

We conclude that the petitioner has failed to meet his burden of demonstrating that he was denied the effective assistance of trial counsel.  Accordingly, we affirm the post-conviction court's denial of the petition.

ALAN E. GLENN, JUDGE